UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| IN RE ) | Bankruptcy Case |
| ) | No. 04-60712-fra13 |
| LESTER G. MONK, and ) | |
| MARY L. MONK, ) | |
| Debtors. ) | |
| ) | |
| LESTER G. MONK, and ) | |
| MARY L. MONK, ) | |
| Plaintiffs ) | |
| ) | |
| v. ) | |
| ) | |
| LSI TITLE COMPANY OF OREGON, LLC, ) | |
| LITTON LOAN SERVICING, LP, ) | |
| U.S. NATIONAL BANK ASSOC., as Trustee ) | Adversary Proceeding |
| under a pooling and servicing agreement dated as of ) | No. 10-6067-fra |
| March 1, 2002, ) | |
| MORGAN STANLEY DEAN WITTER CAPITAL ) | |
| I INC. TRUST 2002-NCI, and ) | |
| DOES 1 through 10, ) | MEMORANDUM OPINION |
| Defendants. ) | |

Defendant Litton Loan Servicing (Litton) has filed a motion to dismiss and dissolve the preliminary injunction, or in the alternative, to strike. For the reasons that follow, Litton's motion will be granted in part and denied in part.

BACKGROUND

A. Debtors' Bankruptcy Case.

Debtors (Plaintiffs herein) filed a bankruptcy petition under chapter 13 on February 4, 2004. Debtors

Page 1 - Memorandum Opinion

listed on Schedule D a claim held by PCFS Mortgage Resources secured by Debtors' personal residence in Selma, Ore. PCFS thereafter filed a proof of claim (#10) in the amount of $112,809. Debtors' chapter 13 plan was filed on February 19, 2004 and provided for a $150 per month payment through the Trustee to cure a pre-petition default to PCFS of $6,000 and also provided for the payment of ongoing mortgage payments directly to PCFS. The Plan was confirmed by order entered March 30, 2004.

During this time, the Trustee had attempted to obtain documentation from PCFS of its security interest and evidence of perfection. When PCFS failed to respond, the Trustee filed an objection to PCFS's $112,809 claim on the basis that the proof of claim did not include a copy of the security agreement and evidence of perfection. The objection was in the form of a self-executing order and notice thereof which gave PCFS 32 days either to send the requested documentation to the Trustee or to file a written request for hearing. Failure to respond in the manner required would result in the claim being "[d]isallowed in full." The objection/order was noticed to PCFS at the address listed in its proof of claim. No response was made and no appeal was filed to the order disallowing the claim . The Debtors continued in chapter 13, completed all required plan payments, and obtained an order of discharge on March 15, 2007. The case was closed on April 10, 2007. The Trustee's Final Account and Report discloses that no payments were made by the Trustee to PCFS on its arrearage claim.

B. The Adversary Proceeding.

On February 10, 2010, Debtors filed a motion to reopen their bankruptcy case in order to reinstate the automatic stay to prevent foreclosure of their residence and to file an adversary proceeding. The case was reopened on February 12 to allow the adversary proceeding to be filed and thereafter closed. A preliminary injunction preventing the complained of foreclosure was entered, after notice and hearing, and the adversary proceeding seeking several remedies was filed.

Complaint

The Complaint alleges that after the Debtors' discharge was entered, Defendant Litton began calling the Debtors demanding that they pay the debt that had been discharged in the Chapter 13 case and threatened to accelerate the loan if payment in full of all arrearages was not made. Thereafter, Litton extended an offer

Page 2 - Memorandum Opinion

of a loan modification and Debtors, fearful of losing their home, signed the loan modification agreement.

Debtors made payments to Litton after the August 31, 2007 loan agreement, but were unable to make all the payments that Litton claims were owed. In June 2009, Litton began contacting the Debtors about alleged arrearages and again threatened foreclosure. Debtors demanded that Litton cease its unlawful collection efforts and requested information from Litton regarding the debt it was collecting, including an accounting.

On October 26, 2009, Defendant LSI Title Company (LSI) sent Debtors a Trustee's Notice of Sale, with the foreclosure sale set for March 4, 2010. Debtors dispute the amount due as well as LSI's claim that it is the trustee under the trust deed and entitled to conduct the foreclosure. Debtors contend that the foreclosure sale violates the Discharge Order entered in their bankruptcy case and does not conform to Oregon law regarding advertisement of trust deeds by advertisement and sale.

<u>Claims for Relief</u>

1. Preliminary injunction preventing foreclosure (which has already been granted) and a permanent injunction prohibiting Litton, LSI, and the holder of the promissory note from attempting to collect any debt from the Debtor/Plaintiffs.

2. Sanctions for contempt against Litton, LSI, and unnamed Does for violation of the bankruptcy court's discharge injunction.

3. Stripping of the lien securing the debt under 11 U.S.C. § 506(d)[1] because the debt was disallowed and discharged.

4. Quiet title in Plaintiffs free and clear of any interest of Defendants LSI and U.S. National Bank Assoc. (USNBA).

5. As an alternative to other relief, rescission of the loan modification agreement between Plaintiffs and Litton based on material misrepresentations made to Plaintiffs to induce them to enter into the agreement. Plaintiffs also seek, in addition to rescission, restitution of all money paid to Litton since the date

---

[1] Any statutory reference contained herein, unless otherwise specified, refers to the Bankruptcy Code, 11 U.S.C. §§ 101 et seq., in effect on the date the Plaintiffs filed their petition for relief - February 4, 2004.

Page 3 - Memorandum Opinion

of Plaintiffs' discharge in bankruptcy.

6. Actual damages, statutory damages, and attorney fees for violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692.

7. Declaratory Relief.

## STANDARD FOR MOTIONS TO DISMISS

Review of a complaint under Fed.R.Civ.P. 12(b)(6)[2] is based on the contents of the complaint, the allegations of which are accepted as true and construed in the light most favorable to the plaintiff. North Slope Borough v. Rogstad *(In Re Rogstad),* 126 F.3d 1224, 1228 (9th Cir. 1997)(citations omitted). "[O]nce a claim has been adequately stated, it may be supported by showing any set of facts consistent with the allegations in the complaint." Bell Atlantic Corp. v. Twombly, 127 S.Ct.1955, 1969 (2007)(internal citation omitted).[3] This standard requires "enough fact to raise a reasonable expectation that discovery will reveal evidence [supporting the cause of action]. Id. at 1965. "A well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Id. (internal citation omitted). However, the court need not accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations. Naert v. Daff, *(In Re Washington Trust Deed Service Corp.),* 224 B.R. 109, 112 (9th Cir. BAP 1998).

In considering the motion, the court may not consider any material "beyond the pleadings." Hal Roach Studios. Inc. v. Richard Feiner and Co. Inc., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). However, material which is properly submitted as part of the complaint may be considered. Id. Exhibits submitted with the complaint may also be considered. Durning v. The First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987). Further, a document whose contents are alleged in the complaint, or which is crucial to the complaint, and whose authenticity no party questions, but which is not physically attached to the pleading, may be

---

[2] Fed.R.Civ.P. 12(b)(6) is made applicable by Fed.R.Bankr.P. 7012(b).

[3] The Bell Atlantic Corp. opinion supercedes that part of Conley v. Gibson, 355 U.S. 41, 45-46 (1957), wherein the Supreme Court stated that dismissal for failure to state a claim is improper unless it appears beyond a doubt that the plaintiff can prove no set of facts to support his claim or entitle him to relief.

Page 4 - Memorandum Opinion

considered. Branch v. Tunnell, 14 F.3d 449, 453-454 (9th Cir. 1994), cert. den. 119 S. Ct. 510(l998)(contents alleged in, but not attached to, complaint); Parrino v. FHP, Inc., 146 F.3d 699, 705-706 (9th Cir. 1998)(not specifically alleged and unattached, but integral to plaintiffs claims). Finally, matters that may be judicially noticed may be considered, Mack v. South Bay Beer Distributors, Inc., 798 F.2d 1279, 1282 (9th Cir. 1986), abrogated on other grounds, Astoria Federal Savings and Loan Ass'n v. Solimino, 501 U.S. 104 (1991), including court records in related or underlying cases. In re American Continental Corp./ Lincoln Sav. & Loan Securities Litigation, 102 F.3d 1524, 1537 (9th Cir. l996), rev'd on other grounds sub nom., Lexecon Inc. v. Milberg Weiss Bershad Hynes and Lerach, 523 U.S. 26 (1998).

## DISCUSSION

A. Litton's Motion to Dismiss

Defendant Litton has filed a motion to dismiss on the following grounds:

1) Plaintiffs do not have a private right of action under the discharge injunction and no violation of the discharge injunction occurred under the facts of this case.

2) Plaintiffs' Chapter 13 Plan did not affect the lien of the Defendants, which rode through bankruptcy unaffected unaffected by the order disallowing the claim of PCFS, Litton's predecessor in interest.

3) Plaintiffs entered into a novation of the loan after the discharge order was entered in the Chapter 13 case.

4) The bankruptcy court lacks post-confirmation subject matter jurisdiction over the claims set forth in the Complaint.

5) Plaintiffs have failed to state a claim for rescission based on the foregoing and the fact that they failed to plead that they could repay moneys owed to the Defendants in order to completely unwind the transaction.

6) The claim for violation of the FDCPA should be dismissed based on the foregoing and because: a) Defendants are not "debt collectors" within the meaning of the FDCPA; b) the FDCPA claim is based on alleged conduct outside the statute of limitations; and c) no FDCPA claim lies for alleged violations of the discharge injunction.

// // //

// // //

Page 5 - Memorandum Opinion

Violation of the Discharge Injunction

"Section 524 states that a discharge 'operates as an injunction against the commencement or continuation of an action, the employment of process, or an act to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived'." Walls v. Wells Fargo Bank, N.A., 276 F.3d 502, 508 (9th Cir. 2002)(citing § 524(a)(2)). Defendant is correct that there is no private right of action for violation of the § 524 discharge injunction. Id. at 510. " 'Civil contempt is the normal sanction for violation of the discharge injunction.'. . . [C]ompensatory civil contempt allows an aggrieved debtor to obtain compensatory damages, attorney fees, and the offending creditor's compliance with the discharge injunction. Therefore, contempt is the appropriate remedy and no further remedy is necessary." Id. at 507 (citations omitted).

The Complaint asks the bankruptcy court to find the Defendants in contempt for violation of the discharge injunction and to award sanctions. No private right of action is asserted by Plaintiffs and Claim 2 will not be dismissed on that basis.

Litton also seeks dismissal of the Claim on the basis that under the facts alleged, no violation of the discharge injunction occurred. To determine whether this is so, some analysis of the actions which occurred in the case must be made. First, the Trustee filed an objection to the secured claim of PCFS because it had not provided the information the Trustee had been seeking to verify the secured status and perfection of the claim. Proper notice was made to PCFS of the objection and order and the fact that it was required to respond within 32 days or its claim would be "disallowed in full." When PCFS failed to respond, its claim was "disallowed." Litton argues in its second ground for dismissal that PCFS's lien was unaffected by the disallowance of its claim and "rode through" bankruptcy unscathed. It is true that a lien will survive bankruptcy despite the failure of the holder to file a proof of claim for the related claim. See Hamlett v. Amsouth Bank (In re Hamlett), 322 F.3d 342 (4th Cir. 2003). Here, however, a proof of claim was filed, and subsequently disallowed on the Trustee's objection.

// // //

// // //

Page 6 - Memorandum Opinion

Section 506(d)[4] provides as follows:

> To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless --
>
> (1) such claim was disallowed only under section 502(b)(5) [unmatured support obligation] or 502(e) [certain claims for reimbursement or contribution] of this title; or
>
> (2) such claim is not an allowed secured claim due only to the failure of any entity to file a proof of claim under section 501 of this title.

Because PCFS's claim was "disallowed," it was not an "allowed secured claim," and the related lien was void pursuant to § 506(d). Defendant's claim was not of the type described in § 506(d)(1), and its claim was disallowed for reasons other than its failure to file a proof of claim. Thus, when the discharge order was entered in Debtors' case, Defendant held a "disallowed" claim and a void lien.

Section 1328 provides in part:

> (a) As soon as practicable after completion by the debtor of all payments under the plan, unless the court approves a written waiver of discharge executed by the debtor after the order for relief under this chapter, the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title, except any debts ---
> (1) provided for under section 1322(b)(5) of this title.
>
> \*\*\*\*

Defendant argues that Debtors did not file an amended Plan after disallowance of its claim and that the Plan continued to provide for ongoing payments to Defendant on the long-term debt pursuant to ¶ 4, and that the Plaintiffs did, in fact, continue to make the ongoing payments to PCFS even after the claim was disallowed. If follows, argues Defendant, that the debt was not discharged under the exception at § 1328(a)(1).

Defendant's argument fails for the following reason: The debt was disallowed under section 502 and, as provided by § 1328(a), it was discharged. A "debt" is defined at §101(12) as "liability on a claim." A "claim" is defined as a "right to payment . . . ." §101(5)(A). Once the claim was disallowed, PCFS no

---

[4] Litton argues that § 506(d) does not provide an independent basis for "lien stripping" and that other parts of the Code, which provide more protections to the creditor, must be relied on to do so. However, Fed.R.Bankr.P. 4003(d) provides that a proceeding to avoid a lien which impairs an exemption may be by motion. In this District, a proceeding to strip off a lien as wholly unsecured may be initiated by motion under §§ 506(a) and (d). In re Yekel, 2006 WL 2662849 (Bankr. D. Or. 2006).

Page 7 - Memorandum Opinion

longer had a right to payment and thus no longer had a "claim" or a "debt." As it no longer possessed a "debt," it follows that it did not have a "debt[] provided for under section 1322(b)(5)," and cannot use § 1328(a)(1) to except its nonexistent debt from discharge.

### Claim for Recission of Post-Discharge Loan Modification Agreement (Claim #5)

The enforceability of the post-discharge Loan Modification Agreement depends on state-law issues involving the enforceability of contracts. Claim #5 seeks rescission of the post-discharge agreement in this case based on alleged misrepresentations made to the Plaintiffs after their bankruptcy case was closed to induce them to enter into the agreement. This is a non-core matter as it does not depend on the bankruptcy code for its existence and could be held in another court. It does not "arise under" the bankruptcy code or "arise in" a case under the bankruptcy code, as it "is not an administrative matter unique to the bankruptcy process that has no independent basis outside of bankruptcy . . . ." Id. at 1130. Nor does the bankruptcy court have "related to" jurisdiction, as it cannot find that resolution of this post-discharge state-law contract claim could "conceivably have any effect on the estate being administered in bankruptcy." See In re Birting Fisheries, Inc., 300 B.R. 489, 505 (9th Cir. BAP 2003). The last possible ground for jurisdiction is "ancillary jurisdiction," which may rest on one of two bases: "(1) to permit disposition by a single court of factually interdependent claims, and (2) to enable a court to vindicate its authority and effectuate its decrees." In re Ray at 1135 (citations omitted). The rescission claim is not a factually interdependent claim, it is an alternative claim. Nor must the court decide this issue to "vindicate its authority and effectuate its decrees." Accordingly, Claim #5 will be stricken as lacking a jurisdictional basis.

### FDCPA Claim (Claim #6)

It is clear from the Complaint that the allegations regarding violation of the FDCPA are based on the alleged violation of § 524. "To permit a simultaneous claim under the FDCPA would allow through the back door what [the debtor] cannot accomplish through the front door - a private right of action. . . . Because [the debtor's] remedy for violation of § 524[,] no matter how cast [,] lies in the Bankruptcy Code, [the debtor's] simultaneous FDCPA claim is precluded." Walls v. Wells Fargo Bank, N.A. at 510-11. Accordingly, Claim #6 of the Complaint for alleged violations of the FDCPA will be dismissed.

Page 8 - Memorandum Opinion

Claim for Quiet Title Action (Claim #4)

The bankruptcy court's jurisdiction in this matter relates to the court's ability to sanction for violation of the discharge injunction. Implicit in this jurisdiction is the court's ability to determine whether, in fact, the debt in question was discharged and whether the discharge injunction was violated. A quiet title action is an equitable action under Oregon law to determine conflicting or adverse claims, interests or estates in real property. See O.R.S. § 105.605(2009). The bankruptcy court has ancillary jurisdiction to quiet title as of the date the discharge was entered in the bankruptcy case, as retention by the bankruptcy court " permit[s] disposition by a single court of factually interdependent claims," namely, whether the Defendant's debt was discharged in the bankruptcy and whether Defendant retained any interest in the property at the date of discharge. Accordingly, the claim to quiet title, as of the date of discharge, will not be dismissed. The legal effect of the post-discharge loan modification agreement between the parties must be determined in another forum.

## CONCLUSION

This Memorandum Opinion constitutes the court's findings of fact and conclusions of law. For the reasons given above, Defendant's motion to dismiss is granted with respect to Claims 5, and 6 and denied with respect to the remainder of the Complaint. Defendant's motion to dissolve the preliminary injunction is denied. An order will be entered by the Court consistent with this Memorandum Opinion

FRANK R. ALLEY, III
Chief Bankruptcy Judge

Page 9 - Memorandum Opinion