UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| IN RE ) | Bankruptcy Case |
| ) | No. 04-60712-fra13 |
| LESTER G. MONK and ) | |
| MARY L. MONK, ) | |
| ) | |
| Debtors. ) | |
| LESTER G. MONK, and ) | |
| MARY L. MONK, ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| LSI TITLE COMPANY OF OREGON, LLC; ) | |
| LITTON LOAN SERVICING, LP; ) | |
| U.S. NATIONAL BANK ASSOC., as Trustee ) | Adversary Proceeding |
| under a pooling and servicing agreement dated as of ) | No. 10-6067-fra |
| March 1, 2002; ) | |
| MORGAN STANLEY DEAN WITTER CAPITAL ) | |
| I INC. TRUST 2002-NCI, and ) | |
| DOES 1 through 10, ) | MEMORANDUM OPINION |
| Defendants. ) | |

Defendants Litton Loan Servicing, LP, U.S. Bank National Association, and Ocwen Loan Servicing, LLC ("Defendants") have filed a motion for summary judgment and Plaintiffs filed a cross-motion for partial summary judgment. Oral argument on the motions was heard on October 30, 2012 and the matters taken under advisement. Following is the court's ruling.

// // //

// // //

Page 1 - MEMORANDUM OPINION

BACKGROUND

A. Debtors' Bankruptcy Case.

Debtors (Plaintiffs herein) filed a bankruptcy petition under chapter 13 on February 4, 2004. They listed on Schedule D a claim held by PCFS Mortgage Resources secured by Debtors' personal residence in Selma, Ore. PCFS was also the servicer of the loan and thereafter filed a proof of claim (#10) in the amount of $112,809, including a pre-petition arrearage of $10,764.43. Debtors' chapter 13 plan was filed on February 19, 2004 and provided for a $150 per month payment through the Trustee to cure the pre-petition arrearage and for the payment of ongoing mortgage payments directly to PCFS. The Plan was confirmed by order entered March 30, 2004.

During this time, the Trustee had attempted to obtain documentation from PCFS of its security interest and evidence of perfection. When PCFS failed to respond, the Trustee filed on November 18, 2004 an objection to PCFS's $112,809 claim on the basis that the proof of claim did not include a copy of the security agreement and evidence of perfection. The objection was in the form of a self-executing order and notice thereof which gave PCFS 32 days either to send the requested documentation to the Trustee or to file a written request for hearing. Failure to respond in the manner required would result in the claim being "[d]isallowed in full." The objection/order was noticed to PCFS at the address listed in its proof of claim. No response was made by PCFS and no appeal was filed to the order disallowing the claim. On December 1, 2004, loan servicing for the loan was assigned to Defendant Litton Loan Servicing, LP. Servicing was thereafter assigned to Defendant Ocwen Loan Servicing, LLC on September 1, 2011. Defendant U.S. National Bank Assoc. is the current beneficial holder of the promissory note and LSI Title Company of Oregon is the successor trustee under the trust deed. During the pendency of the chapter 13 case, Defendant Litton did not file a motion seeking relief from the order denying claim.

The Debtors continued in chapter 13, completed all required plan payments, continued to make direct payments to PCFS/Litton for monthly mortgage payments outside the plan, and obtained an order of discharge on March 15, 2007. The case was closed on April 10, 2007. The Trustee's Final Account and Report discloses that no payments were made by the Trustee to PCFS on its arrearage claim. After the

Page 2 - MEMORANDUM OPINION

discharge order was entered, Defendant Litton and its agents began calling Debtors to inquire regarding payments on the loan and were told by Debtors that they had received a discharge in bankruptcy. On August 8, 2007, Defendant Litton sent a letter to Debtors extending the offer of a loan modification, which Debtors signed on August 27. Debtors made payments to Litton after the loan modification, but were unable to make all of the payments required. In June 2009, Litton again contacted the Debtors about post-loan-modification arrearages and discussed the potential of foreclosure of the trust deed. On October 26, 2009, Defendant LSI sent Debtors a Trustee's Notice of Sale, with a foreclosure sale set for March 4, 2010.

B. The Adversary Proceeding.

On February 10, 2010, Debtors filed a motion to reopen their bankruptcy case in order to reinstate the automatic stay to prevent foreclosure of their residence and to file an adversary proceeding. The case was reopened on February 12 to allow the adversary proceeding to be filed and thereafter closed. A preliminary injunction preventing the complained of foreclosure was entered, after notice and hearing, and the adversary proceeding seeking several remedies was filed.

Complaint

The Complaint alleges that after the Debtors' discharge was entered, Defendant Litton began calling the Debtors demanding that they pay the debt that had been discharged in the chapter 13 case and threatened to accelerate the loan if payment in full of all arrearages was not made. Thereafter, Litton extended an offer of a loan modification and Debtors, fearful of losing their home, signed the loan modification agreement.

Debtors dispute the amount due as well as LSI's claim that it is the trustee under the trust deed and entitled to conduct the foreclosure. Debtors contend that the foreclosure sale violates the Discharge Order entered in their bankruptcy case and does not conform to Oregon law regarding advertisement of trust deeds by advertisement and sale.

Claims for Relief

1. Preliminary injunction preventing foreclosure (which has already been granted) and a permanent injunction prohibiting Litton, LSI, and the holder of the promissory note from attempting to collect any debt from the Debtor/Plaintiffs.

Page 3 - MEMORANDUM OPINION

2. Sanctions for contempt against Litton, LSI, and unnamed Does for violation of the bankruptcy court's discharge injunction.

3. Stripping of the lien securing the debt under 11 U.S.C. § 506(d)[1] because the debt was disallowed and discharged.

4. Quiet title in Plaintiffs free and clear of any interest of Defendants LSI and U.S. National Bank Assoc. (USNBA).

5. As an alternative to other relief, rescission of the loan modification agreement between Plaintiffs and Litton based on material misrepresentations made to Plaintiffs to induce them to enter into the agreement. Plaintiffs also seek, in addition to rescission, restitution of all money paid to Litton since the date of Plaintiffs' discharge in bankruptcy.

6. Actual damages, statutory damages, and attorney fees for violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692.

7. Declaratory Relief.

Claims 5 and 6 were dismissed by the court on an earlier motion by Defendants to dismiss the Plaintiff's complaint. (See docket #53).

STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, admissions, and affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56, made applicable by Fed.R.Bankr.P. 7056. The movant has the burden of establishing that there is no genuine issue of material fact. *Celotex Corp. V. Catrett*, 477 U.S. 317, 323 (1986). The court must view the facts and draw all inferences in the light most favorable to the nonmoving party. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630-31 (9th Cir. 1987). The primary inquiry is whether the evidence presents a sufficient disagreement to require

// // //

---

[1] Any statutory reference contained herein, unless otherwise specified, refers to the Bankruptcy Code, 11 U.S.C. §§ 101 et seq., in effect on the date the Plaintiffs filed their petition for relief - February 4, 2004.

Page 4 - MEMORANDUM OPINION

a trial, or whether it is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

A party opposing a properly supported motion for summary judgment must present affirmative evidence of a disputed material fact from which a factfinder might return a verdict in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). Fed.R.Bankr.P. 7056, which incorporates Fed.R.Civ.P. 56(e), provides that the nonmoving party may not rest upon mere allegations or denials in the pleadings, but must respond with specific facts showing there is a genuine issue of material fact for trial. Absent such response, summary judgment shall be granted if appropriate. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 326-27 (1986).

Both Plaintiffs and Defendants have submitted a concise statement of material facts with documentary evidence. The court will also take judicial notice of its docket in the case, including the Pre-Trial Order submitted by the parties.

## DISCUSSION

**Defendants' Motion for Summary Judgment**

Defendants have filed a motion for summary judgment on all claims, making the following arguments:

1. The Bankruptcy Court lacks subject matter jurisdiction over Plaintiffs' claims, as the parties have entered into a novation of the loan through a loan modification agreement several years after the bankruptcy case was closed.

2. Ninth Circuit case law holds that lack of documentation is an insufficient reason to disallow a claim when the validity and amount of the claim are not in question.

3. The objection to claim filed by the Trustee did not provide Defendants with necessary due process to terminate their property and lien rights.

4. Plaintiffs' confirmed plan, which called for Debtors to make monthly mortgage payments directly to Defendants, was not modified after the claim objection and is binding on the Debtors under the doctrine of *res judicata*.

Page 5 - MEMORANDUM OPINION

5. Debtors did not intend to avoid Defendants' interest through their plan or bankruptcy case, and had entered into a novation of the loan after the discharge order was entered in the bankruptcy case.

6. Because Defendants' lien is valid and enforceable, their actions taken post-bankruptcy did not violate the discharge injunction.

In the court's Memorandum Opinion addressing the Defendants' motion to dismiss (Docket #52), I ruled that the effect of the order disallowing PCFS's claim was as follows: the entire claim was discharged upon entry of the order of discharge in the Plaintiffs' bankruptcy and the lien securing that claim became void pursuant to § 506(d). The court's conclusions of law and reasoning are contained in that Memorandum and will not be restated here. That motion required that the court consider primarily the complaint filed in the adversary proceeding and the allegations of fact contained therein. I will address Defendants' concerns in turn.

A. Subject Matter Jurisdiction

Defendants argue that the court lacks subject matter jurisdiction over this proceeding due to the fact that the parties entered into a post-discharge loan modification which effected a novation, completely replacing the original agreement with a new one. Because the new post-discharge agreement created new post-bankruptcy debts, the bankruptcy court would thus have no jurisdiction to consider claims involving a default of those debts.

A bankruptcy court retains ancillary jurisdiction: "(1) to permit disposition by a single court of factually interdependent claims, and (2) to enable a court to vindicate its authority and effectuate its decrees." *Battle Ground Plaza, LLC v. Douglas Ray, et al. (In re Ray)*, 624 F.3d 1124, 1135 (9th Cir. 2010)(citations omitted). The second situation, above, giving rise to ancillary jurisdiction provides "subject matter jurisdiction to interpret orders entered prior to dismissal of the underlying bankruptcy case, . . . and to dispose of ancillary matters such as an application for an award of attorney's fees for services rendered in connection with the underlying action. . . . Alternatively, '[t]he bankruptcy court does not have jurisdiction . . . to grant new relief independent of its prior rulings once the underlying action has been dismissed'." *Id.* (citations omitted).

Page 6 - MEMORANDUM OPINION

In the present case, the court has subject matter jurisdiction to interpret its order disallowing PCFS's claim and to determine the effect of that order. It also has subject matter jurisdiction to determine whether post-petition actions taken by Defendants violate the terms of the discharge order granted in Plaintiffs' bankruptcy and to award sanctions or other relief consistent with those actions.

Thus, the court may determine whether post-petition actions taken by Defendants, including execution of the loan modification agreement, violate the discharge injunction and may order sanctions, under the court's inherent power to sanction, for any violations found to have occurred. Moreover, should the court determine that the Defendant's lien was void after the order of discharge was entered, it may order that the lien be stripped.

B. Ninth Circuit Caselaw

Defendants cite to two opinions of the Bankruptcy Appellate Panel to argue that the grounds for disallowance of PCFS's claim were inadequate: *Heath v. American Express Travel Related Services Co. et al. (In re Heath)*, 331 B.R. 424 (9th Cir. BAP 2005) and *Campbell v. Verizan Wireless S-CA et al. (In re Campbell)*, 226 B.R. 430 (9th Cir. BAP 2005). *Heath* and *Campbell* each involved debtors who had objected to a creditor's proof of claim on the basis that it lacked the documentation required by Fed.R.Civ.P. 3001(c), without contesting the debtor's liability or the amount of debt. In both cases, the debtors' objections were overruled by the bankruptcy court and the court's decisions were appealed by the debtors. While *Heath* involved chapter 7 debtors and *Campbell* involved chapter 13 debtors, the holdings in each case were identical in all relevant respects. The BAP held that while the failure to attach sufficient documentation in support of a creditor's proof of claim may deprive proofs of claim of their *prima facie* validity, the lack of documentation by itself is not sufficient grounds to disallow the claim.

Had PCFS or its successor timely filed a response to the Trustee's objection to claim or timely sought reconsideration of the court's order disallowing the claim, Defendants' argument may have some merit.[2]

---

[2] It should be noted that while the motion to disallow PCFS's claim was filed on November 18, 2004 and the order disallowing the claim was effective 32 days later, the opinions in *Heath* and *Campbell* were not
(continued...)

Page 7 - MEMORANDUM OPINION

However, there was no response to the Trustee's earlier written request for documentation, no response to the Trustee's motion to disallow claim, and no appeal of the order disallowing the claim. The order disallowing the claim fully adjudicated the issue and clearly evidenced the court's intention that the order was the court's final act with regard to the claim, making the order subject to appeal. *See Ross v. Thompson (In re Levine)*, 162 B.R. 858, 859 (9th Cir. BAP 1994). An objection at this point to the order of the bankruptcy court, on the grounds that there was an insufficient basis to object to the claim in the first place, constitutes an improper collateral attack on a final order of the court.

C. Res Judicata Effect of Confirmed Plan

Defendants are correct that a confirmed plan is *res judicata* with respect to matters subject to the confirmed plan and order confirming. They argue that the Debtors' failure to amend the confirmed plan providing for the payment by the Trustee of the arrearage amount to PCFS and its transferees and the direct payment of the monthly mortgage payment prevents the Debtors from arguing, or the court from deciding, whether the Defendants' claim was disallowed and its lien voided.

While it may have been appropriate to file an amended plan after Defendants' claim was disallowed, the fact is that the objection to claim and the order disallowing the claim were entered <u>after</u> the order confirming the chapter 13 plan had been entered. The effect of the order disallowing the claim would thus have had to have been considered prospectively by interested parties and by necessity would have effected a change to the confirmed plan. Defendants state that they understood the effect of the order disallowing the claim was solely to prevent the Trustee from making monthly payments on the arrearage claim. Defendants' *res judicata* argument, however, would require that the terms of the confirmed plan continued to be enforceable and that the Trustee would have been required to continue making monthly payments on the arrearage pursuant to the plan, contrary to what Defendants argue. Moreover, because Defendants continued to have a potentially valid lien until the Debtors' plan was completed and the discharge was entered, payment of ongoing mortgage obligations by the Debtors until the discharge was entered is not necessarily

---

[2](...continued)
filed until September 29, 2005 and December, 14, 2005, respectively.

Page 8 - MEMORANDUM OPINION

incompatible with the disallowed claim. *See also* § 349(b)(1)(C) (dismissal of a case reinstates any lien voided under § 506(d)).

D. Due Process

"After a judgment (including a discharge) is finalized, and the time for appeal has run, the judgment can only be reconsidered in the limited circumstances provided by [Fed.R.Civ.P.] 60(b)." *Espinosa v. United Student Aid Funds, Inc.*, 553 F.3d 1193, 1199 (9th Cir. 2008). If "notice is so inadequate as to violate due process, any judgment entered against that party would be void [Fed.R.Civ.P. 60(b)(4)], and such constitutionally deficient service would certainly be a just reason for relief from the judgment (subsection 6)." *Id*. at 1202. "The standard for what amounts to constitutionally adequate notice, however, is fairly low; it's 'notice reasonably calculated to apprise interested parties of the pendency of the action and afford them an opportunity to present their objection'." *Id.* at 1202 (citation omitted). "If a party is adequately notified of a pending lawsuit, it is deemed to know the consequences of responding or failing to respond, even if gaining actual knowledge requires inquiry into court files, hiring a lawyer or conducting legal research." *Id.* at 1203.

Defendants argue that their due process rights were violated in this case because a lien avoidance action should have been instituted by an adversary proceeding pursuant to Fed.R.Bankr.P. 7001(2).[3] However, Fed.R.Bankr.P. 9014(b) requires that a motion in a contested matter be served in the same manner provided for service of a summons and complaint by Rule 7004. The notice provided by the Trustee's motion was clear and specific in that it sought "disallowance in full" of "Claim No. 10, filed in the amount of $112,809.33." The fact that a consequence of disallowance of the claim may be the voiding of the claimant's lien was not spelled out in the notice. However, as stated in *Espinoza*, a party is deemed to know the consequences of responding or failing to respond, if the party is adequately notified of the pending lawsuit. Moreover, the Ninth Circuit in *Espinoza* held that a confirmed chapter 13 plan which provided for the

---

[3] "The following are adversary proceedings: . . . (2) a proceeding to determine the validity, priority, or extent of a lien or other interest in property, other than a proceeding under Rule 4003(d);"

Page 9 - MEMORANDUM OPINION

discharge of a student loan[4], to which the affected creditor did not respond, is effective in discharging the debt, assuming the creditor received constitutionally adequate notice of the plan.

Defendants ask the court to heed the commentary in *Dewsnup v. Timm*[5] in which the court stated that had the debtor remained aloof of the bankruptcy its lien would have survived intact and that it saw no reason why the debtor's acquiescence in the bankruptcy should change the result. The Supreme Court held that a chapter 7 debtor could not "strip down" a creditor's lien on real property to a judicially determined value of collateral. The court grounded its decision on the basis that the claim had been fully allowed and was secured by a lien with recourse to the underlying collateral. It clearly stated, however, that its opinion was limited to the facts before it and that other fact scenarios must await legal resolution at another time. Citing *Dewsnup,* courts have held that disallowance of a claim on the basis that it was untimely-filed, while not technically fitting the language of § 506(d)(2), should not be a basis for voiding a creditor's lien in chapter 7. *See e.g. Hamlett v. Amsouth Bank (In re Hamlett)*, 322 F.3d 342, 349 (4th Cir. 2003). However, I am not prepared to extend that reasoning to a chapter 13 case in which the creditor filed a timely proof of claim and clearly intended to participate in the debtor's reorganization.

Which brings us finally to the one question that neither party seems to have briefed: whether the original notice of the Trustee's motion to disallow claim was adequate to provide due process notice to PCFS of the Trustee's motion to disallow its claim. Fed.R.Bankr.P. 9014(b) provides that a motion in a contested matter "shall be served in the manner provided for service of a summons and complaint by Rule 7004." Bankruptcy Rule 7004(b)(3) provides that service may be made by first class mail

> (3) Upon a domestic or foreign corporation or upon a partnership or other unincorporated association, by mailing a copy of the summons and complaint to the attention of an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant.

---

[4] And which ordinarily requires an adversary proceeding to discharge pursuant to Bankruptcy Rule 7001(6).

[5] 502 U.S. 410 (1992).

Page 10 - MEMORANDUM OPINION

The Certificate of Service for Trustee's motion to disallow claim [main case Docket #21] indicates that service of the motion was made on PCFS at "PCFS Mortgage Resources, 309 Vine Street ML 175D, Cincinnati, OH 45202," the address provided by PCFS on its filed proof of claim. Because service was not made upon an officer or agent of the creditor, it did not comply with applicable service requirements. Whether the service that was made was constitutionally adequate to provide due process to PCFS remains an unresolved question. If it is determined that service was constitutionally inadequate, the result would be a finding that the order disallowing PCFS's claim is void and the claim was not discharged in bankruptcy.

E.  Loan Modification Agreement

Defendants argue that the Loan Modification Agreement, attached to Plaintiffs' amended complaint, entered into between the Debtors and Defendant U.S. Bank created a novation, thus taking it beyond the subject matter jurisdiction of the bankruptcy court. The agreement provides that it "amends and supplements" the original mortgage, deed of trust and promissory note and that the original documents continue to remain in full force and effect, but subject to the amended terms. Consideration given by the Lender would appear to be its agreement not to foreclose its interest in the real property so long as the Borrowers remain current.

"[I]n order for a subsequent contract to constitute a novation and discharge of a prior one by the implied intention of the parties, ordinarily it must appear that the new contract is so radically different from the old one that it necessarily supercedes it as an entirety." 66 C.J.S. *Novation* § 13 (2012). "[T]he implication will not result where there is no such inconsistency between the two contracts as to suggest an animus novendi. Such is the case, for instance, where there is a mere modification of the terms of a preëxisting contract." *Id.*

It is clear that the Loan Modification Agreement was not a novation of the original agreements, but, as the name of the document itself indicates, was a modification of the terms of the original agreements. If the court determines that the underlying debt was disallowed and discharged in bankruptcy and the lien was voided, then the Loan Modification Agreement provided to Debtors would constitute an agreement, "the consideration for which, in whole or in part, is based on a debt that is dischargeable in a case under this title."

Page 11 - MEMORANDUM OPINION

§ 524(c). Because the required procedures for reaffirmation of a debt were not followed pursuant to § 524(c), such a finding would result in the agreement being unenforceable.

**Plaintiff's Cross-Motion for Partial Summary Judgment**

Plaintiffs seek summary judgment on their third and fourth claims for relief, stripping of the lien securing the debt and quieting title in Plaintiffs free and clear of the interests of Defendants, respectively. Because the adequacy of the notice of Trustee's motion to disallow claim has not yet been resolved, the court must deny Plaintiff's cross-motion for summary judgment.

## CONCLUSION

Pursuant to this Memorandum Opinion, Defendants' motion for summary judgment and Plaintiffs' cross-motion for summary judgment will be denied. At trial, the parties should be prepared to litigate the issue of the constitutional adequacy of the notice to PCFS of the motion to disallow claim. If notice is found to have been inadequate to provide due process rights to the recipient, judgment will be rendered for Defendants. If notice is determined by the court to have been adequate, then Plaintiffs and Defendants will proceed with their cases, subject to the court's conclusions of law contained herein. An order will be entered by the court consistent with this Memorandum Opinion.

FRANK R. ALLEY, III
Chief Bankruptcy Judge

Page 12 - MEMORANDUM OPINION